IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03450-PAB
(Bankruptcy Nos. 20-14593-JGR, 20-148623-JGR, 20-14963-JGR, Chapter 11)

In re:

GUNSMOKE, LLC,

      Debtor.

---

HAPPY BEAVERS, LLC,

      Debtor.

---

ARMED BEAVERS, LLC,

      Debtor.

---

GUNSMOKE, LLC,
HAPPY BEAVERS, LLC, and
ARMED BEAVERS, LLC,

      Plaintiffs,
v.

ANGRY BEAVERS, LLC,
EDWARD J. KLEN, and
STEVEN J. KLEN,

      Defendants.

---

## ORDER

---

      This matter is before the Court on Defendants' Motion to Withdraw the Automatic

Reference to the Bankruptcy Court [Docket No. 1] and Defendants' Motion to Dismiss

[Docket No. 2].

## I. BACKGROUND

The motion for withdrawal of reference and motion to dismiss arise from an adversary proceeding pending in the United States Bankruptcy Court for the District of Colorado, No. 20-1262.  Plaintiffs in the adversary proceeding are various limited liability companies ("LLCs") that purchased and now operate a gun club that was formerly owned and operated by defendants.  *See* Docket No. 1 at 8, ¶¶ 8, 11, 12-15. Plaintiffs own different parts of the business.  For example, Happy Beavers, LLC purchased the subject property, while Armed Beavers, LLC purchased all the inventory of the business.  *See id.* at 8-9. ¶¶ 17, 19.  During "presale discussions and negotiations," defendants allegedly made certain representations to plaintiffs regarding the business and property.  *See id.* at 9, ¶ 24-29.  Specifically, defendants represented that the upstairs and downstairs "traps" could handle certain calibers of ammunition and that the elevator could be upgraded for commercial use.  *See id.*, ¶ 30-32.  Defendants also allegedly made false or misleading statements regarding the financial health of defendants' business.  *See id.* at 10, ¶ 37.  For example, profitability of the gun club was declining leading up to the sale and, knowing this, defendants allegedly failed to disclose any information regarding 2016 financials.  *See id.*, ¶ 39.  Contrary to defendants' representation, membership was also in decline in 2016 before the sale. *See id.*, ¶ 40.  In choosing to purchase the property from defendants and operate the gun club, plaintiffs relied on defendants' false or misleading representations.  *See id.* at 9, ¶ 34.

Plaintiffs, now debtors in a bankruptcy proceeding, bring six claims against

defendants in the adversary proceeding: (1) negligent representation, (2) false representation, (3) nondisclosure or concealment, (4) fraud in the inducement to contract, (5) breach of the implied duty of good faith, and (6) unjust enrichment.  *See id.* at 13-19.  On November 20, 2020, defendants filed a motion to withdraw the reference from the bankruptcy court, arguing that they have not consented to adjudication by the bankruptcy court, that the claims are non-core bankruptcy claims, being based on state personal injury tort, and, as a result, the reference should be withdrawn.  See *id.* at 2-5.  That same day, defendants filed a motion to dismiss, arguing that plaintiffs do not have standing to assert their claims, the Court does not have jurisdiction over the claims, or, in the alternative, plaintiffs claims are barred by the statute of limitations, statute of frauds, and the terms of the parties' contracts.  *See generally* Docket No. 2.

**II.  ANALYSIS**

> **A.  Withdrawal of Bankruptcy Reference**

The district court may withdraw the reference of a case to the bankruptcy court on its own motion or on motion of a party "for cause shown."  28 U.S.C. § 157(d).  Defendants contend that cause has been shown for withdrawal because (1) the claims asserted are "non-core" claims, namely, state law, personal injury torts, and (2) they have not consented to adjudication by the bankruptcy court.  *See* Docket No. 1 at 2-5.  Plaintiffs respond that these are core proceedings because they seek to void agreements with defendants, including a security interest in the subject property.  *See* Docket No. 5 at 4.  In the alternative, plaintiffs argue that these are non-core, "related to" claims.  *Id.* at 5.

3

A district court has jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b).  Furthermore, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C. § 157(b)(1).  There are several non-exclusive types of proceedings that the statute defines as "core."  *See* § 157(b)(2).  Even if a proceeding is not a core proceeding, a bankruptcy judge may hear it so long as it is "related to a case under title 11."  *See In re Midgard Corp.*, 204 B.R. 764, 771 (B.A.P. 10th Cir. 1997) (quotations omitted).  In such situations, "any final order[s] or judgment[s] shall be determined by the district judge," rather than the bankruptcy judge.  *Id.* (citing 28 U.S.C. §157(c)(1)).  A case arising "under" the bankruptcy code is one that "asserts a cause of action created by the Code."  *Id.*  Cases arising "in" a bankruptcy case "are those that could not exist outside of a bankruptcy case, but that are not causes of actions created by the Bankruptcy Code."  *Id.* (citations omitted).  "Related to" jurisdiction occurs when "a bankruptcy case . . . could have been commenced in federal or state court independently of the bankruptcy case, but the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy."  *Id.* (citation and quotations omitted).

Defendants argue that the claims are neither core claims nor "related to" a bankruptcy case because the claims are "personal, state-law claims" and, as a result, "do not affect the amount of property for distribution to, or allocation among, the creditors."  *See* Docket No. 1 at 3-4.  Plaintiffs respond that the claims either are (1) arising under 28 U.S.C. § 157(b)(2) or (2) are "arising in" claims, making them core

proceedings, because the result of the proceeding will determine whether "[d]efendants have a lien against the Property, which is in the bankruptcy estate."  Docket No. 5 at 5. In the alternative, plaintiffs contend that the bankruptcy court has "related to" jurisdiction because their "claims directly affect the estate being administered in bankruptcy and the allocation and amounts of liabilities."  *Id.*  The Court agrees that this is not a core proceeding.  However, the Court finds that the case is related to a bankruptcy dispute, making it a non-core related to proceeding.

Plaintiffs assert that this is a core, arising under proceeding pursuant to § 157(b)(2)(K).  *See* Docket No. 5. at 5.  That subsection states that "determinations of the validity, extent, or priority" of liens are core proceedings.  *See* § 157(b)(2)(K). Plaintiffs argue that, because their adversary complaint seeks to "void" various agreements, including the "security interest against the Property," their case falls under this subsection.  *See* Docket No. 5 at 5.  But plaintiffs' complaint does not seek to directly determine the validity, extent, or priority of any lien.  Rather, plaintiffs' complaint contains various state law tort claims that, if proven to be true, plaintiffs claim would operate to void the sale of the subject property to plaintiffs.  But, that does not make this adversary proceeding about "the validity, extent, or priority" of any lien.  *See* § 157(b)(2)(K).  The advisory proceeding is still about state law tort claims involving misrepresentation.  Accordingly, the Court finds that this is not a core proceeding pursuant to § 157(b)(2)(K).

Furthermore, this is not an "arising in" proceeding.  A case "which is based entirely on state tort law [] is in no way dependent on the Debtor's bankruptcy case for

its existence." *In re Midgard*, 204 B.R. at 772. "The touchstone would seem to be whether the case has a life of its own in either state or federal common law or statute independent of the federal bankruptcy laws." *See In re Burgess*, No. 12-30901-MER, No. 12-1743-MER, 2013 Bankr. LEXIS 1296, at *7 (Bankr. D. Colo. Apr. 2, 2013). Here, plaintiffs' claims are a variety of state law claims, all of which could exist on their own separate from any bankruptcy proceeding. For example, plaintiffs could have brought a false representation claim without a bankruptcy proceeding; there is no requirement that plaintiffs be in bankruptcy to assert such a claim. Because these claims have a "life of [their] own" outside of any bankruptcy proceeding, they are not arising in proceedings. *See id.*

However, the Court finds that this case relates to a bankruptcy proceeding. A case "relates to" a bankruptcy proceeding if it "may conceivably have an effect on the administration of the bankruptcy estate." *Midgard*, 204 B.R. at 772. Furthermore, a case "need not be against the debtor or debtor's property if the outcome may have some effect on the estate." *Id.* (citations omitted). The parties seem to agree on this point. The adversary complaint seeks to void certain agreements, including defendant Angry Beavers LLC's security interest against the subject property, because the agreements were attended by various circumstances of fraud. *See* Docket No. 1 at 13-18. The outcome of those claims will therefore have "some effect on the estate." *Midgard*, 204 B.R. at 772. Accordingly, the Court finds that plaintiffs' claims are non-core claims that are related to the bankruptcy proceeding.

The Court finds that a full withdrawal of the reference is inappropriate at this

time.  While a party's right to a jury trial on some or all claims raised in an adversary proceeding may constitute cause for withdrawal of the reference to bankruptcy court, it is within the district court's discretion to determine at what stage in the proceedings, and in what manner, the reference should be withdrawn.  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *In re Healthcentral.com*, 504 F.3d 775, 787-88 (9th Cir. 2007) (noting that the bankruptcy "system promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them"); *In re Hardesty*, 190 B.R. 653, 656 (Bankr. D. Kan. 1995). Courts in this district have repeatedly held that where the bankruptcy court possesses more familiarity with the facts of a case incident to its management of the bankruptcy proceedings, withdrawal of the reference to bankruptcy court should be delayed until the case is ready for trial.  *See*, *e.g.*, *In re Kirk E. Douglas, Inc.*, 170 B.R. 169, 170 (Bankr. D. Colo. 1994); *In re M & L Bus. Mach. Co., Inc.*, 159 B.R. 932, 934 (Bankr. D. Colo. 1993).  Similarly, other courts "universally" hold that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court."  *In re Healthcentral.com*, 504 F.3d at 787 (collecting cases); *In re Sheldrake Lofts LLC*, 2014 WL 6450340, at *2 (S.D.N.Y. Nov. 15, 2014) ("A determination that the Bankruptcy Court does not have final adjudicative authority over a claim does not mean that the reference must be withdrawn.").  This practice honors the Seventh Amendment's guarantee that "the right of trial by jury shall be preserved," U.S. Const. amend. VII, while furthering the congressional policies underlying the statutory bankruptcy scheme set forth in Title 11

of the United States Code.  Likewise, even if plaintiffs' claims are non-core, that does not automatically result in withdrawal of the reference.  *McCord v. Papantoniou*, 316 B.R. 113, 125 (Bankr. E.D.N.Y. 2004) ("'Because the classification of a matter as core or non-core is not wholly determinative, these factors of judicial economy must be considered regardless of the outcome of' the core/non-core inquiry." (citation omitted)); *Sheldrake Lofts*, 2014 WL 6450340, at *2 ("The Bankruptcy Court may hear a proceeding that is not a core proceeding but that i[s] otherwise related to a case under [T]itle 11, and submit proposed findings of fact and conclusions of law to the district court." (quotations and citations omitted)).

However, given the presence of potential jury trial claims, and the understanding that withdrawal will be appropriate at some point given defendants' lack of consent to adjudication by the bankruptcy court, the Court finds its appropriate to withdraw the reference in part, as permitted by 28 U.S.C. § 157(d).  *See also In re 3PL4PL, LLC*, No. 15-cv-01403-RM, 2015 WL 8479974, at *2 (D. Colo. Dec. 9, 2015) ("The district court may, however, withdraw, in whole or in part, any case or proceeding.").  The Court thus will withdraw the reference only for the purpose of dispositive motions, the final trial preparation conference, trial, and all pre-trial matters.  *See id.* at *2-3.  With the reference partially withdrawn, the Court now addresses defendants' motion to dismiss.

### B.  Motion to Dismiss

Defendants make three arguments that they believe warrant dismissal of the adversary proceeding.  First, defendants argue that plaintiffs lack standing to assert their claims.  *See* Docket No. 2 at 2-6.  Second, they contend that plaintiffs' claims are

8

improper personal injury claims over which the bankruptcy court does not have jurisdiction. *See id.* at 6-8. Third, defendants claim that plaintiffs' claims are barred by the statute of limitations, statute of frauds, and the plain terms of the underlying contracts at issue. *See id.* at 18. The Court addresses each in turn.

### 1. Standing

A motion under Rule 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City and Cty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012).[1]

For the Court to have subject matter jurisdiction, plaintiff must have standing. *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element fo subject matter jurisdiction."). Article III of the Constitution vests the judicial branch with jurisdiction to hear "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. An essential part of the case-and-controversy requirement is the standing doctrine, which "serves to identify

---

[1] Defendants argue that they are bringing a "factual attack" toward plaintiffs' standing. Docket No. 2 at 3. In those situations, "a district court may not presume the truthfulness of the complaint's factual allegations." *Hold v. United States*, 46 F.3d 1000, 1003 (10th. Cir. 1995). The Court need not resolve this issue, however, because, even assuming defendants bring a factual attack, defendants evidence fails to demonstrate that defendants did not make any representations to plaintiffs and, more importantly, defendants make a dubious legal argument without any support.

those disputes which are appropriately resolved through the judicial process."

*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  To have standing,

> [f]irst, the plaintiff must have suffered an "injury in fact"—an invasion of a
> legally protected interest which is (a) concrete and particularized, and (b)
> actual or imminent, not conjectural or hypothetical.  Second, there must be
> a causal connection between the injury and the conduct complained
> of—the injury has to be fairly traceable to the challenged action of the
> defendant, and not the result of the independent action of some third party
> not before the court.  Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (citations, quotations, and alterations omitted).

Here, defendants contest the second element of standing, that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* (citations, quotations, and alterations omitted).  "Although the 'traceability' of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation, Article III does 'require proof of a substantial likelihood that the defendant's conduct caused the plaintiff's injury in fact.'"  *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (citation omitted).  Defendants argue that this prong is not met because the plaintiff LLCs did not exist when the terms of the various contracts with defendants were negotiated.  *See* Docket No. 2 at 4.  Rather, two other parties, Richard Weingarten and Chee Wei Fong, were the parties that negotiated the terms.  *Id.*

The Court finds defendants' standing argument unpersuasive.  First, defendants cite no authority for the proposition that a business entity whose principals negotiate the terms of the contract lacks standing to enforce the terms of that contract.  There is no issue of "attenuated causal chain[s]," whereby it is unclear whether a certain action by a

defendant actually causes any harm to a plaintiff.  *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) (noting that the Supreme Court found the Environmental Protection Agency's "non-action" on greenhouse gas emissions was traceable, even if minute, to harms Massachusetts was suffering from climate change). Rather, even if it is true that some of the terms were negotiated before the existence of plaintiffs, which plaintiffs dispute, defendants' alleged actions and misrepresentations in the very contracts that plaintiffs signed are traceable to defendants.  Defendants' own exhibits show that plaintiffs signed various contracts with defendants; if defendants made representations in those contracts or prior to signing those contracts, then there is a "substantial likelihood" that defendants' actions caused the harms alleged. *Habecker*, 518 F.3d at 1225.

Second, the traceability prong of standing asks if the injury is "fairly traceable to the challenged action of the defendant and not the result of the independent action of some *third party not before the court.*"  *Lujan*, 504 U.S. at 560-61 (emphasis added) (citations, quotations, and alterations omitted).  Defendants fail to explain who, other than themselves, could have made the alleged misrepresentations; defendants do not argue that some third party made any representations at all to plaintiffs.  Regardless of when plaintiff LLCs were formed, there is no dispute that plaintiffs allege that the misrepresentations – the challenged action – caused plaintiffs harm, regardless of to whom those representations were made.  Defendants' attempt to graft further requirements onto the traceability prong of standing is unavailing and, as a result, the Court finds that plaintiffs satisfy the traceability prong and, thus, have standing.

### 2.  Personal Injury Torts

Defendants' second argument, while unclear, suggests that plaintiffs bring "personal injury claims," which are not "core" proceedings or "related to" the bankruptcy court's jurisdiction, thus depriving this Court and the bankruptcy court of jurisdiction. *See* Docket No. 2 at 6-8.  In reply, defendants appear to change their argument, suggesting that a bankruptcy court does not have jurisdiction to adjudicate plaintiffs' claims, rather than there being no jurisdiction at all to hear those claims.  *See* Docket No. 7 at 4-5.  Because the Court has already found that the claims are non-core and related to the bankruptcy proceeding, and that a limited withdrawal of the reference to the bankruptcy court is appropriate, the Court rejects defendants' argument.

### 3.  Federal Rule of Civil Procedure 12(b)(6)[2]

Defendants next argue that, pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings under Federal Rule of Bankruptcy Procedure 7012(b), plaintiffs' adversary complaint should be dismissed.  Defendants make three arguments.  First, defendants contend that the statute of limitations bars plaintiffs' claims.  Docket No. 2 at 9.  Second, defendants argue that the statute of frauds bars plaintiffs' claims.  *Id.*  And, third, defendants claim that the contracts at issue prevent plaintiff from bringing any claims pursuant to those contracts.  *Id.*

### a.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

---

[2] The Court assumes that the allegations in plaintiffs' adversary complaint are true in considering the motion to dismiss.  *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with her allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).

### b. Statute of Limitations

Defendants' first argument is that two different statutes of limitation bar plaintiffs' claims.[3]  Docket No. 2 at 10-11.  Defendants contend that Colorado has a two year statute of limitations for negligent misrepresentation and a three year limitations period for fraudulent misrepresentation and fraudulent concealment.  *See id*.  According to defendants, both of those limitations periods had run by the time plaintiffs filed their claims.  *Id*.  The Court finds defendants' arguments unpersuasive.

While statute of limitations arguments are generally disfavored at the motion to dismiss stage, they can be brought when the complaint clearly demonstrates that the claims are time barred.  *See Bank of Am., N.A. v. Dakota Homestead Title Ins. Co.*, 553 F. App'x 764, 765-68 (10th Cir. 2013) (unpublished) (addressing the Colorado statute of limitations for breach of contract at the motion to dismiss stage); *Swafford v. Newfield Expl. Co.*, No. 19-cv-02746-PAB-NYW, 2020 WL 5881276, at *4 (D. Colo. Sept. 24, 2020) (noting that statute of limitations arguments can be raised in a motion to dismiss "if the complaint itself plainly establishes the defense").  Although this is true, defendants' argument misunderstands when the statute of limitations begins to run.

Pursuant to Colorado Revised Statute § 13-80-101, "[a]ll contract actions" must "be commenced within three years after the cause of action accrues."  Colo. Rev. Stat. § 13-80-101(1).  Furthermore, § 13-80-102 states that all tort claims "must be commenced within two years after the cause of action accrues."  Colo. Rev. Stat. § 13-80-102(1)(a).  According to defendants, because the suit was brought more than two or

---

[3] The parties do not dispute that Colorado law governs these underlying state claims.  As a result, the Court applies Colorado law.

three years after the sale of the property, the statute of limitations has run on plaintiffs'
claims.  Docket No. 2 at 10-11.  Defendants argue that the "agreements/contracts"
themselves demonstrate that the claims are time barred.  Docket No. 7 at 6.  Missing
from defendants motion, however, is any discussion of the accrual date and why the
signing of the contracts or agreements constitutes the proper date for accrual.

Both applicable statutory sections state that the action must be commenced
"after the cause of action accrues."  *See* Colo. Rev. Stat. § 13-80-101(1); Colo. Rev.
Stat. § 13-80-102(1).  For "a cause of action for injury to person, property, reputation,
possession, relationship, or status," the cause of action will "accrue on the date both the
injury and its cause are known or should have been known by the exercise of
reasonable diligence."  Colo. Rev. Stat. § 13-80-108(1).  And, for "a cause of action for
fraud, misrepresentation, concealment, or deceit," the cause of action will accrue when
the "fraud, misrepresentation, concealment, or deceit is discovered or should have
been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-
108(3).  Defendants do not explain how it is clear from the face of the complaint, or the
contracts themselves, that the alleged defects in the business and property were known
or should have been known to plaintiffs at the time of signing.

Rather, the adversary complaint alleges that, sometime after purchase, plaintiffs
discovered various defects.  For example, plaintiffs allege that they learned, post-
purchase, that "[d]efendants' presale representation regarding the condition and
capacity of the upstairs trap were false."  Docket No. 1 at 11, ¶ 61.  Plaintiffs also
"discovered pre-existing undisclosed damage to the downstairs trap."  *Id.* at 12, ¶ 81.
The dates when plaintiffs learned or discovered this information are not mentioned in

15

the complaint.  Only when the "complaint make[s] clear that the right sued upon has

been extinguished" will a court resolve a statute of limitations defense under Rule

12(b)(6).  *See Radloff-Francis v. Wyoming Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th

Cir. 2013) (unpublished).  The complaint and claims here do not reach that standard.

### c. Statute of Frauds

Defendants' second argument is that various Colorado statutes of fraud prevent

plaintiff from asserting claims regarding the quality of the property and the

representations made prior to purchase.  Defendants again misunderstand what is

required under these statutes.

First, defendants argue that several claims are barred because they concern

"misrepresentations concerning (in pertinent part) fixtures appurtenant to the real

property."  *See* Docket No. 2 at 12.  Defendants cite to Colorado Revised Statute § 38-

10-108, which requires that "[e]very contract . . . for the sale of any lands or any interest

in lands is void unless the contract or some note or memorandum thereof expressing

the consideration is in writing and subscribed by the party by whom the . . . sale is to be

made."  Colo. Rev. Stat. § 38-10-108.  The only requirement of this statute is that

contracts for sale of land must be reduced to writing, and nothing more.  *See Burnford*

*v. Blanning*, 540 P.2d 337, 340 (Colo. 1975) (noting the "general rule" that a contract for

sale of land must be in writing and cannot be orally modified, but proceeding to allow

oral modification under the circumstances); *Leiserv, LLC v. Summit Ent. Ctrs., LLC*, 15-

cv-01289-PAB-KLM, 2016 WL 1046274, at *3 (D. Colo. Mar. 16, 2016) ("[A] contract for

the sale of land must be in writing." (citation omitted)).  Defendants seem to suggest

that, any time a contract is in writing, fully executed, and integrated, a plaintiff is barred from bringing any claims resulting from fraud that induced the complaining party to enter into a contract or from misrepresentations in that written contract.  Such a result is not required by the statute of frauds, and defendants have not provided any support for such a contention.

Defendants' citations to the other statutes of fraud fail for the same reasons. Specifically, defendants cite Colorado Revised Statute § 4-2-201 and § 38-10-124.  The former states that "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made."  Colo. Rev. Stat. § 4-2-201(1).  The latter requires that "[c]redit agreements", such as contracts and promises to "lend, borrow, repay, or forbear repayment of money," which are greater than $25,000, be reduced to writing for a debtor or creditor to "file or maintain an action or a claim relating to a credit agreement."  Colo. Rev. Stat. §§ 38-10-124(1)(a)-(2).  Again, defendants suggest that, whenever a contract is reduced to writing, the statute of frauds bars a fraud claim arising from or out of that contract.  But nothing about these statutes of fraud require such a result.  Rather, they only require that, for a contract to be enforceable, or an action maintained, the contract must be in writing.  *See* Colo. Rev. Stat. § 4-2-201; Colo. Rev. Stat. § 38-10-124.  There is no dispute that the contracts here are in writing.  Indeed, defendants have submitted the various written agreements to the Court.  *See generally* Docket No. 3.  As a result, these statutes do not prevent plaintiffs from bringing claims pursuant to those written contracts or resulting from those written contracts.

17

### d.  Terms of the Agreements

Defendants' final argument is that the terms of the agreements bar plaintiffs' claims.  *See* Docket No. 2 at 16-18.  Specifically, defendants contend that the contract states that (1) the property is conveyed "[a]s [i]s," "[w]here [i]s", and "[w]ith [a]ll [f]aults," (2) the buyer fully inspected the property and is "fully satisfied with the condition," and (3) that the contract represents the "entire understanding between the parties."  *Id.* at 16-17.  The Court finds defendants' arguments unavailing.

Defendants' first two arguments result from defendants' cherry picking of terms of the contract.  Defendants argue that the purchaser accepted the property "as is." *See* Docket No. 2 at 16.  However, the very portion of the contract the defendants quote also states that the "[s]eller must disclose to [b]uyer any latent defects actually known by [s]eller."  Docket No. 2 at 16.  The crux of plaintiffs' adversary complaint is that defendants knew of numerous defects, such as problems with the upstairs and downstairs traps, failed to disclose those defects to plaintiffs, and those defects were not discoverable prior to occupancy and use.  *See* Docket No. 1 at 8-10.  Contrary to defendants' assertion, the contract does not bar plaintiffs' claims, but specifically permits them.  Defendants' second argument, that plaintiffs inspected the property, fails for the same reason.  The agreement contemplates that some things are not discoverable by inspection – hence the term "latent"[4] – and defendants were contractually required to disclose them.  If they did not disclose them, or purposefully obscured the real issues with the defects, as plaintiffs allege, then the contract itself

---

[4] Black's Law Dictionary defines "latent" as "[c]oncealed; dormant <a latent defect>."  *Latent*, Black's Law Dictionary (11th ed. 2019).

provides that plaintiffs will have a claim for those failed or fraudulent disclosures.

The Court finds defendants' third argument equally unpersuasive.  Defendants provide no support, and the Court has found none, for the proposition that a party cannot bring the types of claims plaintiffs assert simply because the contract is fully executed.  If defendants were correct, no aggrieved party would be able to bring any claim based on breach of contract or fraudulent inducement simply because the contract contained an integration clause.

## III. CONCLUSION

Wherefore, it is

**ORDERED** that Defendants' Motion to Withdraw the Automatic Reference to the Bankruptcy Court [Docket No. 1] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that, pursuant to 28 U.S.C. § 157(d), the automatic reference to the bankruptcy court is partially withdrawn.  Dispositive motions, the final trial preparation conference, trial, and all pre-trial matters will be withdrawn.  The bankruptcy court will handle all other matters, including discovery matters.  It is further

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 2] is **DENIED**.

DATED September 29, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge